**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON**

**CIVIL ACTION NO. 07-73-DLB**

**TONI L. CULBRETH**                                                                         **PLAINTIFF**

**vs.**                        **MEMORANDUM OPINION AND ORDER**

**COVINGTON BOARD OF EDUCATION ET AL.**                     **DEFENDANTS**

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the court on Defendants' motion to disqualify Plaintiff's counsel. (Doc. #3). Plaintiff has filed a response in opposition to this motion (Doc. #6), and Defendants have filed a reply (Doc. #7). For the reasons that follow, the motion is **denied**.

**I.    Introduction**

Plaintiff alleges a due process violation under 42 U.S.C. § 1983. Defendants have filed a motion to dismiss Plaintiff's counsel, alleging that Attorney Brandon N. Voelker is bringing suit against his own client in violation of the prohibition against representing clients where representation of one client would be directly adverse to another client.

**II.   Background**

Plaintiff is a long-time employee of the Covington Board of Education, serving as a teacher from 1982-1993 and as an administrator from 1993-2005. On or about May 13, 2005, Plaintiff received a letter from Defendant Jack Moreland, informing her that she was being reassigned to a position as a classroom teacher, with pay to be "in accordance with the applicable administrative salary schedule position and experience level commensurate

1

with [Plaintiff's] position prior to this assignment." (Doc. #1-2). On or about May 3, 2006, Plaintiff received another letter from Defendant Moreland, which notified her that her salary was being reduced to that of a teacher. (Doc. #1-3). Plaintiff complains that her right to due process was violated because she never received notice of demotion and/or reduction in pay. (Compl. ¶ 18).[1]

While the facts discussed above provide a general background to this case, the pending motion concerns facts surrounding the representation provided by Plaintiff's counsel, Brandon N. Voelker, in two distinct suits. (Doc. #3-2). In the instant case, Mr. Voelker has brought an action on behalf of his client against the Covington Board of Education and Jack Moreland (both in his official and individual capacity as Superintendent of the Covington Board of Education). In another suit currently pending before the Kenton Circuit Court, *Commonwealth of Kentucky ex rel. Gregory D. Stumbo, Attorney General v. Paul Mullins,* Case No. 07-CI-872, Mr. Voelker is representing Paul Mullins, a member of the Covington Board of Education, in an action brought by the Commonwealth of Kentucky's Office of the Attorney General challenging the eligibility of Mr. Mullins to serve as a member of the Board of Education. (Doc. #3-3).[2] Defendants argue that Mr. Voelker

---

[1] Plaintiff argues that the letter of May 13 "did not indicate Plaintiff was being demoted, nor contain any specific reference as to the reasons for demotion and/or the right to appeal pursuant to KRS 161.765." (Compl. ¶ 11). Plaintiff further notes that the letter of May 3 was issued pursuant to KRS 161.760, which concerns pay decrease and reduction in responsibility for teachers. (Compl. ¶ 13). Since, according to Plaintiff, she was still an administrator at the time the letter of May 3 was issued, KRS 161.765 was the applicable statute. (Compl. ¶ 14, 16).

[2] The Complaint filed by the Attorney General's Office notes that, "[a]t the time he was elected to the Board, Paul Mullins was an employee of the Covington Independent School District." The Complaint further states that "[t]he eligibility requirements of KRS § 160.180(2)(g) prohibit a person from serving on a local school board if at the time of his election he is interested in the sale of services for which school funds are expended." (Doc. #3-3 at 2).

and both his current and previous law firms, by virtue of Mr. Voelker's representation of Paul Mullins in the ouster action pending in Kenton Circuit Court, should be disqualified from representing Plaintiff Culbreth in the instant action.

### III. Analysis

"A party's right to have counsel of its choosing is a fundamental tenet of American jurisprudence, and therefore a court may not lightly deprive a party of its chosen counsel." *Capacchione v. Charlotte-Mecklenburg Bd. of Educ.*, 9 F. Supp. 2d 572, 579 (W.D.N.C. 1998). Disqualification is an extreme remedy, which requires courts to "avoid overly-mechanical adherence to disciplinary canons at the expense of litigants' rights freely to choose their counsel." *Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142, 146 (4th Cir. 1992). Additionally, courts should "remain mindful of the opposing possibility of misuse of disqualification motions for strategic reasons." *Id.* Moreover, "[t]he decision whether to disqualify an attorney ordinarily turns on the peculiar factual situation then at hand." *In re Petition by Mechem*, 880 F.2d 872, 874 (6th Cir. 1989).

### A. Suit Against the Board of Education: Single Entity or Individual Members

In the instant action, Mr. Voelker brought suit on behalf of Plaintiff against the Board of Education while simultaneously representing an individual member of that Board in a separate action, which deals with that individual member's eligibility to serve on the Board. While Defendants contend that Mr. Voelker is "bringing suit against his own client," (Doc #3-2 at 5), Plaintiff argues that Mr. Voelker has brought an action against the Board of Education and not Paul Mullins (Doc. #6 at 3).

Defendants emphasize that "[t]he Board of Education consists of its elected

members" and would have the Court believe that "filing an action against the Board of Education...is filing an action against its members." (Doc. #3-2 at 3). Defendants cite no case law in support of this contention – a contention that forms the basis of their argument that "Mr. Voelker's clients are adverse parties with conflicting interests." (Doc. #3-2 at 3).

In response, Plaintiff notes that Paul Mullins is not a party to the suit brought against the Board of Education by Mr. Voelker. "Even when Board Members have suit brought against them in their official capacities, said claims are 'to be treated as a suit against the entity.'" (Doc. #6 at 3 (citing *Conner v. Patton*, 133 S.W.3d 491, 493 (Ky. Ct. App. 2004)). "Official-capacity suits...'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Ky. v. Graham*, 473 U.S. 159, 165-166 (1985)(citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 660 n.55 (1978)). The Supreme Court has stated that "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* at 166. (citing *Brandon v. Holt*, 469 U.S. 464, 471-472 (1985)). "It is *not* a suit against the official personally, for the real party in interest is the entity." *Id.* (emphasis in original).

Accordingly, the Court finds that Mr. Voelker's action on behalf of Plaintiff against the Board of Education does not amount to bringing suit against his own client, Paul Mullins.

**B.     Representation of Clients with Adverse Interests**

Defendants allege that Mr. Voelker's simultaneous representation of Paul Mullins in the Kenton Circuit Court and Plaintiff in the instant action against the Board of Education creates a number of ethical problems, each requiring the disqualification of Mr. Voelker as Plaintiff's counsel in this action. Specifically, Defendants argue that Mr. Voelker is

representing parties that have interests that are directly adverse to one another, thereby violating the attorney's duty of loyalty owed to his client and compromising his independent personal judgment. Defendants cite Rule 1.7 of the Kentucky Rules of Professional Conduct, which prohibits lawyers from representing clients where representation of that client would be directly adverse to another client, S.C.R. 3.130(1.7)(a) (2006), and Comment 1 to Rule 1.7, which states that loyalty is an essential component of the lawyer-client relationship.

The threshold issue under Rule 1.7 is whether Mr. Voelker's representation of Paul Mullins in the Kenton Circuit Court action is "directly adverse" to his representation of Plaintiff Culbreth in the instant action. *See Jaggers v. Shake*, 37 S.W.3d 737, 740 (Ky. 2001). S.C.R. 3.130(1.7) provides:

> (a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless: (1) The lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and (2) Each client consents after consultation. (b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless: (1) The lawyer reasonably believes the representation will not be adversely affected; and (2) The client consents after consultation.

In an attempt to clarify the meaning of "directly adverse," Comment 2 to Rule 1.7 provides:

> As a general proposition, loyalty to a client prohibits undertaking representation directly adverse to that client without that client's consent. Thus, a lawyer ordinarily may not act as advocate against a person the lawyer represents in some other matter, even if it is wholly unrelated. On the other hand, simultaneous representation in unrelated matters of clients whose interests are only generally adverse, such as competing economic enterprises, does not require consent of the respective clients.

Based on the dictates of Rule 1.7, the Court must determine whether Mr. Voelker's representation of Plaintiff Culbreth will adversely affect his attorney-client relationship with

Paul Mullins (or vice versa). Defendants raise a number of arguments as to how the interests of the parties are adverse to one another.

First, Defendants argue that Mr. Voelker's independent personal judgment is compromised as a result of his conflicted loyalties. Specifically, Defendants opine that Mr. Voelker's "strategic decisions in this case have and will be influenced – either of necessity or subconsciously – by his relationship with Mr. Mullins" to the detriment of Plaintiff. (Doc. #7-1 at 2). In support of this argument, Defendants cite Plaintiff's decision not to seek the appeal of her demotion to which she was entitled under K.R.S. §161.765, which, according to Defendants, renders her "vulnerable to the defense that she failed to exhaust her administrative remedies." (*Id.*) Defendants note that "[i]t is reasonable to assume that attorney Voelker chose not to pursue such an appeal because he recognized the outright conflict – or at least recognized the 'appearance of impropriety' – in having one of his clients in a position to directly influence the fate of another client's administrative appeal." (*Id.*) This argument, however, evidences a fundamental misunderstanding of Plaintiff's due process claim in the instant action. Plaintiff argues that she was not notified of her right to appeal. Therefore, from her position, it would be nonsensical to go through an appeals process of which she was not notified at the time of her change in job status. It is the absence of this notification of the appeals process which forms the basis of her claim.

Defendants also argue that the pending ouster action could become an issue in the instant action. Defendants pose a scenario in which the Board questions whether it should take any official action with respect to Plaintiff Culbreth while faced with the prospect of Paul Mullins being ousted. Even taking into consideration this possibility, it is difficult to understand how this undermines Mr. Voelker's representation of either of his clients.

6

In response to Defendants' arguments, Plaintiff opines that the actions are wholly unrelated and that the suits will in no way influence one another. For instance, Plaintiff notes that board members take an oath that they "will not in any way influence the hiring or appointment of district employees, except the hiring of the superintendent of schools or school board attorney." KRS § 160.170. Defendants admit that "a board of education generally has no influence over hiring matters," but point out that, "[p]ursuant to K.R.S. 161.765, when a superintendent demotes an administrator, that administrator has the statutory right to appeal the superintendent's decision." (Doc. #7-1 at 1). Defendants add that, since "[t]hat appeal is heard and decided by the board of education," Paul Mullins, in his capacity as board member, is in a position to determine Plaintiff Culbreth's fate. (Doc. #7-1 at 1-2).

Defendants also note the possibility that Mr. Voelker could discover privileged information that could be used to the detriment of both Mr. Mullins and the Board of Education. (Doc. #3-2 at 4). Defendants emphasize the *potential* for such discovery but fail to identify how this discovery might take place given the lack of similarity between the actions in question. Defendants note that, while KRS § 160.170 prohibits board members from influencing hiring decisions, individual board members possess decision-making authority as to litigation involving the boards of education they serve. (Doc. #7-1). Defendants state:

> As in any litigation in which this Board is a defendant, individual board members will meet in executive session with the Board's legal counsel about this action to discuss: the facts relevant to Plaintiff's claims, as well as potential defenses; information received and divulged during discovery and the impressions of the Board's legal counsel regarding that information; confidential information the Board's counsel learns as she investigates Plaintiff's claims; litigation strategies; mediation strategies; settlement

>positions; and the like.  After discussing the matter privately, the individual board members will direct the Board's legal counsel on the desired courses of action to take at various stages of the litigation.

(Doc. #7-1 at 3).  Defendants argue that, by virtue of Paul Mullins's participation in these litigation strategy sessions, he "will undoubtedly acquire confidential, privileged information regarding this action." (Doc. #7-1).[3]  While Defendants posit that Mr. Mullins may fall victim to a "slip of the tongue" due to his lack of understanding as to what information is confidential, (Doc. #7-1 at 4 n.1), this position ignores the lack of similarity between the two suits and the fact that Defendants have not identified any reason why Mr. Voelker and Mr. Mullins would discuss this matter.  In fact, Mr. Voelker has stated that he "would certainly not seek to have Mr. Mullins speak of any executive session privileged communications" and that any disclosure would be brought to the Court's attention. (Doc. #6 at 4).  Moreover, pursuant to KRS § 156.132, Mr. Mullins would be subject to removal or suspension for disclosure of confidential information.

       Defendants also argue that Mr. Voelker's participation in both cases creates an appearance of impropriety.  Defendants do not flesh out this argument.  Rather, their discussion of the appearance of impropriety dovetails with their discussion of Mr. Voelker's alleged breach of loyalty and representation of clients with adverse interests – issues which have already been addressed.

    Finally, Defendants point out that the Supreme Court held that an attorney violated

---

[3] Defendants' worries over the potential discovery of confidential information do not give rise to Mr. Voelker's disqualification.  Mr. Voelker is certainly aware of his ethical obligations in both cases.  If circumstances warrant it, Defendants can always re-raise this issue at the appropriate juncture.

Disciplinary Rule 5-105 based on his representation of one client in a breach of contract action and a second client in a collection matter against the first client. *Kentucky Bar Ass'n v. Roberts*, 579 S.W.2d 107, 109 (Ky. 1979).[4]  Moreover, the Supreme Court noted that "[r]egardless of whether [the attorney's] actions created an actual conflict of interest, they created a potential conflict between the interests." *Id.* Defendants' reliance on *Roberts* is misplaced, however, as the instant action is easily distinguished from *Roberts*. The cases at issue in *Roberts* were deemed to be related by the Supreme Court, as they both arose from a common fact situation – a dispute over a construction contract. In this case, the actions are unrelated – a due process claim filed by an employee against the Board of Education and a suit filed by the Attorney General's office challenging a single board member's eligibility to serve.

Due to the tenuous relationship between these two actions, the Court finds that the interests of the parties herein are not directly adverse to one another. The actions do not

---

[4] The *Roberts* opinion references the disciplinary rules of the Model Code of Professional Responsibility. "The Kentucky Supreme Court has since adopted the Model Rules of Professional Conduct." *Innes v. Howell Corp.*, 76 F.3d 702, 712 n.3 (6th Cir. 1996).  However, the language of DR 5-105 is similar to that of S.C.R. 3.130(1.7).  DR 5-105 provides in part:
> (A) a lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, or if it would be likely to involve him in representing differing interests, except to the extent permitted under DR 5-105(C). (B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, or if it would be likely to involve him in representing differing interests, except to the extent permitted under DR 5-105(C). (C) In the situations covered by DR 5-105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent judgment on behalf of each.

arise from a common set of facts. No work done on or information learned in one representation is relevant to the other. The evidence that Mr. Voelker will be seeking to discover in the two matters is not the same. Presumably, in the Kenton Circuit Court ouster action, Mr. Voelker will be discussing his client's status as a board member and his interests in the sale of services for which school funds were expended in the time leading up to the election. In the instant action, by contrast, Mr. Voelker will be hoping to discover information about Plaintiff Culbreth's demotion – a personnel decision unrelated to the eligibility issue in the Kenton Circuit Court action. The issues to be resolved in the matters are dissimilar in nature. Finally, Mr. Voelker is not acting as an advocate against Paul Mullins in the instant action.

Based on the above reasoning, the Court finds that the interests of the parties represented by Mr. Voelker are not adverse to one another. Due to the attenuated relationship between the two cases at issue here, if the interests are adverse at all, they are only "generally" so. Moreover, to the extent that they are adverse, the Court finds that Mr. Voelker's ability to represent his clients both loyally and vigorously will not be undermined.

### IV. Conclusion

In accordance with the above, **IT IS ORDERED** that:

(1) Defendant's motion to disqualify Plaintiff's counsel (Doc. #3) be, and hereby is, **DENIED**.

(2) The parties shall file their Rule 26 Report of Planning Meeting within 10 days of this Memorandum Opinion and Order.

This 24th day of October, 2007.



G:\DATA\Opinions\2-07-73-MOODisqualify-Culbreth.wpd

11